IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Julia B. Smith,                                    )
     Plaintiff,                              )     Case No. 8:09-02061-JMC-JDA
                                                  )
     v.                                      )     **REPORT AND RECOMMENDATION**
                                                  )     **OF MAGISTRATE JUDGE**
City of Greenwood; Mathis Plumbing &     )
Heating Co., Inc.; and James H. Mathis,   )
Steven J. Brown, Lawrence Ouzts, and      )
Ronnie Powell, in their individual         )
capacities,                                )
     Defendants.                             )
                                                  )

This matter is before the Court on a motion for summary judgment filed by

Defendants James H. Mathis and Mathis Plumbing & Heating Co., Inc. ("the Mathis

Defendants" and "the Mathis Motion") [Doc. 69] and a motion for summary judgment filed

by Defendants City of Greenwood, Steven J. Brown, Lawrence Ouzts, and Ronnie Powell

("the Greenwood Defendants" and "the Greenwood Motion") [Doc. 70]. This action alleges

race discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of

1964, as amended ("Title VII"),[1] an interference with contractual relations claim,[2] and a civil

conspiracy claim. [Doc. 13.] Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in

---

[1]Although the first cause of action lists only "Race Discrimination under Title VII," the text of the Amended Complaint alleges both a discrimination and retaliation claim. [Doc. 13 ¶¶ 12–20.] Additionally, while the Amended Complaint appears to include allegations that could be construed as a harassment claim, Plaintiff stipulated in her response in opposition to the Greenwood Motion that the Amended Complaint does not assert a claim of racial harassment. [Doc. 74 at 10.]

[2]In her response in opposition to the Mathis Motion, Plaintiff stipulated to the dismissal of the intentional interference with contractual relations claim. [Doc. 75 at 10.] Accordingly, the Court recommends this claim be dismissed. Because this is the only claim against Defendant Mathis Plumbing & Heating Co., Inc., it should be dismissed as a Defendant in the case.

employment discrimination cases are referred to a United States Magistrate Judge for consideration.

The Mathis Defendants and the Greenwood Defendants filed motions for summary judgment on April 8, 2011.  [Docs. 69, 70.]  Plaintiff filed responses in opposition to the motions on May 26, 2011.  [Docs. 74, 75.]  The Greenwood Defendants filed a reply on June 8, 2011.  [Doc. 84.]  The motions are now ripe for review.

## BACKGROUND[3]

Plaintiff, a former employee of Defendant the City of Greenwood ("the City"), filed this action on August 5, 2009 and filed an Amended Complaint on October 6, 2009, alleging a race discrimination and retaliation claim against the City, an interference with contractual relations claim against Defendant Mathis Plumbing & Heating Co., Inc. ("Mathis Plumbing"), and a civil conspiracy claim against Defendants James H. Mathis ("Mathis"), Steven Brown ("Brown"), Lawrence Ouzts ("Ouzts"), and Ronnie Powell ("Powell").  [Docs. 1, 13.]  Plaintiff was employed by the City in its Building Inspection Department.  [Doc. 76-1 at 3:2–4.]  Plaintiff was promoted to Office Manager in August 2004 after the previous

---

[3]The Court includes only those facts relevant to the issues before it.  Both parties refer to facts in their filings the Court does not include in its Report and Recommendation because those instances would be relevant only if Plaintiff were asserting a hostile work environment or harassment claim.  However, as previously noted, Plaintiff stipulated in her response in opposition to the Greenwood Motion that the Amended Complaint does not assert a claim of racial harassment [Doc. 74 at 10] and stipulated to the dismissal of the intentional interference with contractual relations claim in her response in opposition to the Mathis Motion [Doc. 75 at 10].  Accordingly, the Court includes background information relevant only to Plaintiff's race discrimination, retaliation, and civil conspiracy claims.  With respect to the race discrimination claim, the only adverse employment action Plaintiff alleges in her response in opposition to the Greenwood Motion is her termination.  [*Id.* at 9.]  With respect to the retaliation claim, as discussed below, Plaintiff alleges only four instances that could be considered internal complaints for purposes of a retaliation claim.  Therefore, the Court limits this section only to the facts relevant to the issues before the Court and omits other factual allegations that appear to address a hostile work environment or harassment claim, e.g., allegations about an altercation with Brian Rackley and allegations about allegedly racially motivated or insensitive comments that are not tied to Plaintiff's termination and about which Plaintiff does not allege she complained.

Office Manager, Janet Jones ("Jones"), left.  [Doc. 76-5 at 3.]   During Plaintiff's employment, Brown was City Manager.  [Doc. 70-1 at 2; Doc. 74 at 2.]  Powell was the head of the Building Inspection Department until he resigned in April 2007.  [Doc. 70-1 at 2; Doc. 74 at 2.]  After Powell resigned, Ouzts served as Interim Building Official.  [Doc. 76-4 at 5:17–6:7.]

At some point after Jones left, Linda Kordus ("Kordus") was hired as a secretary in the Building Inspection Department.  [*Id.* at 25:9–15.]  Plaintiff alleges she began experiencing problems soon after Kordus was hired and that although Plaintiff was given the title of Office Manager, she felt she never really worked in that capacity.  [Doc. 74 at 2.]  Plaintiff complained to her superiors three times about issues with Kordus: (1) Plaintiff expressed to Powell that Plaintiff felt Kordus was her supervisor despite Plaintiff's title as Office Manager [Doc. 76-1 at 5:25–6:17]; (2) Plaintiff expressed concerns to Brown and Ouzts about Kordus not telling Plaintiff when Kordus needed to leave early [Doc. 76-2 at 25:22–26:5]; and (3) Plaintiff informed Ouzts that Kordus had a problem taking instructions from Plaintiff because Plaintiff is black [Doc. 76-1 at 38:21–23].

Brown received complaints from contractors, including Mathis, about not getting service in the office and no one answering the phones, so Brown pulled telephone records after receiving these complaints.  [Doc. 70-2 at 14:20–15:25.]  The telephone records indicated Plaintiff had been making numerous personal calls from work.  [*Id.*]  Brown presented the telephone records to Plaintiff, and Plaintiff did not refute having made the calls.  [*Id.* at 16:2–17:4.]  Plaintiff was terminated on August 23, 2007.  [Doc. 76-5.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**The Mathis Motion**

The Mathis Defendants argue they are entitled to summary judgment because (1) South Carolina law does not allow a public official's cause of action for civil conspiracy against private citizens; (2) Plaintiff has no proof of a civil conspiracy between the individual defendants; and (3) Plaintiff has presented no evidence for her claim of

intentional interference with contractual relations.[4]  [Doc. 69.]  Because the Court agrees Plaintiff has failed to present any evidence Mathis conspired with the other defendants, summary judgment should be granted on Plaintiff's civil conspiracy claim against Mathis.

"A civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff thereby causing special damage." *Future Group, II v. Nationsbank*, 478 S.E.2d 45, 51–52 (S.C. 1996) (citing *La Motte v. The Punch Line of Columbia*, 370 S.E.2d 711 (1988)).  To establish a conspiracy, "evidence, direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Island Car Wash, Inc. v. Norris*, 358 S.E.2d 150, 153 (S.C. Ct. App. 1987).

The record contains no evidence that Mathis had any agreement with the other individual defendants or that Mathis joined together with the other individual defendants for the purpose of injuring Plaintiff.  When asked what evidence existed of Mathis's involvement in a civil conspiracy, Plaintiff testified:

> The only thing that I have concerning that is the conversations that went on in the office with Mr. Powell, Mr. Ouzts concerning those permits whereas Firriolo did not get the permits or – I mean, where Mathis did not pull the permits, so my belief, like I said, all of this is what I believe happened.

[Doc. 69-3 at 6:15–21.]  When pushed further and asked if she was just guessing about Mathis's involvement in her termination, Plaintiff answered, ". . . well, yes," and admitted she was not aware of any meetings involving Mathis where Plaintiff's termination was discussed.  [*Id.* at 6:22–7:8.]

---

[4]As previously noted, Plaintiff stipulated to the dismissal of the intentional interference with contractual relations claim, and the Court has recommended this claim be dismissed.  *See supra* note 2.

On the other hand, Mathis testified he never had conversations with the other individual defendants where Plaintiff's name was mentioned. [Doc. 69-4 at 3:3–18.] Mathis recalled meeting Plaintiff only on one occasion before seeing Plaintiff at her deposition. [*Id*. at 1:11–17.] During that meeting, Mathis went into the office where Plaintiff worked to apply for a permit, but instead of assisting Mathis, Plaintiff remained on what appeared to be a personal telephone call.[5] [*Id*. at 1:21–2:14.] Mathis merely reported this incident to Brown, without identifying Plaintiff by name. [*Id*. at 4:18–5:12.] Further, Brown testified that, other than one call from Mathis to report this incident, Brown had not had any meetings with Mathis or spoken to Mathis. [Doc. 69-5 at 3:23–4:20.] Because the record contains no evidence that Mathis joined together with the other individual defendants for the purpose of injuring Plaintiff, no genuine issue of material fact exists to establish a claim for civil conspiracy against Mathis and summary judgment should be granted on this claim.[6]

**The Greenwood Motion**

### *Title VII Race Discrimination Claim*

With respect to the race discrimination claim, the Greenwood Defendants argue (1) the fact that Brown hired and promoted Plaintiff makes any claim of racial animus highly unlikely and (2) any claim of termination based on race is defeated by the City's legitimate and non-discriminatory reason for discharge. [Doc. 70-1 at 8–9.] The Court agrees summary judgment should be granted on this claim.

---

[5]Mathis testified Plaintiff was talking about where she had eaten that week and where she was going to eat. [Doc. 69-4 at 2:5–11.]

[6]Because the Court finds the record contains no evidence to support Plaintiff's civil conspiracy claim against Mathis, the Court need not address Mathis's remaining argument South Carolina law does not allow a public official's cause of action for civil conspiracy against private citizens.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework.[7] *Id.* (quoting *Hill*, 354 F.3d at 285). Under this framework, an employee must first prove a prima facie case of discrimination.[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* By providing

---

[7]Here, Plaintiff does not attempt to survive summary judgment using direct or circumstantial evidence of discrimination. Instead, she relies exclusively on the *McDonnell Douglas* burden-shifting scheme to argue she can establish a prima facie case of discrimination and that the City's articulated legitimate, nondiscriminatory reason for terminating Plaintiff is a pretext for discrimination. [Doc. 74 at 7–10.]

[8]To establish a prima facie case of discrimination, a plaintiff must allege facts showing (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). Although a plaintiff must ordinarily show she was replaced by someone outside the protected class, the Fourth Circuit has held there are exceptions to the fourth prong. *See Miles v. Dell, Inc.*, 429 F.3d 480, 485–90 (4th Cir. 2005) (discussing possible exceptions). Because Plaintiff alleges the position remained open and the duties were assumed by Kordus [Doc. 74 at 9], the exceptions are not at issue in this case.

such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture."  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).  If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation.  *McDonnell Douglas*, 411 U.S. at 804; *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

However, as one court within the Fourth Circuit has noted, "[t]he relevance of the *McDonnell Douglas* scheme outside of the trial context is limited."  *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011).  The Fourth Circuit has observed,

> Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of "the ultimate question of discrimination *vel non*." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). As the Supreme Court has explained, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [ *McDonnell Douglas* ] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non*.' " *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (citation omitted).

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010).  Further, the Supreme Court has stated,

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Aikens*, 460 U.S. at 715 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("The *Aikens* principle applies, moreover, to summary judgment as well as trial proceedings."). In light of this guidance from the Supreme Court and the Fourth Circuit, the Court agrees with the District of Maryland that where the employer has met its burden of articulating a legitimate, nondiscriminatory reason for its adverse action against the plaintiff, the Court may assume, without deciding, that the plaintiff has established a prima facie case of discrimination. *Lerner*, 2011 WL 2414967, at *14.

Here, the City has articulated and supported a legitimate, nondiscriminatory reason for Plaintiff's discharge—primarily because Plaintiff was making personal calls at work, though on Plaintiff's termination paperwork the City also listed a poor attendance record, poor customer service, and negative attitude. [Doc. 76-3 at 4–5.] Brown testified he pulled telephone records after receiving complaints from contractors about no one answering the phones, and the records indicated Plaintiff had been making numerous personal calls from work. [Doc. 70-2 at 14:20–15:25.] Brown presented Plaintiff with the telephone records, and Plaintiff never refuted having made the personal calls. [*Id.* at 16:2-17:4.] Additionally, Plaintiff admitted in her deposition that she made personal calls from work. [Doc. 76-1 at 16:3–11.] Based on this explanation given by the City, the Court concludes the City has met its burden under *McDonnell Douglas* to produce evidence from which a jury could

conclude the City had a legitimate, nondiscriminatory reason for terminating Plaintiff. Consequently, the Court assumes without deciding that Plaintiff has met her burden with respect to a prima facie case of discrimination. *See Lerner*, 2011 WL 2414967, at *14. Accordingly, the Court will consider whether Plaintiff has met her burden of demonstrating that the City's proffered reason is merely a pretext for discrimination, which would indicate whether Plaintiff could meet her ultimate burden of persuasion and demonstrate discrimination *vel non*. *See Merritt*, 601 F.3d at 294 ("The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." (alteration in *Merritt*) (quoting *Burdine*, 450 U.S. at 256)).

To prove an employer's articulated reason is a pretext for discrimination, a plaintiff "must prove '*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). Upon review of the record, the Court determines Plaintiff has failed to demonstrate a genuine issue of material fact as to whether the City's proffered reason for Plaintiff's termination is merely a pretext for discrimination. In her response in opposition to the motion for summary judgment, Plaintiff states:

> Plaintiff has proffered sufficient evidence to rebut the Defendants' proffered reason and show it was pretext. Plaintiff has provided numerous instances of racially motivated conduct and comments, as well as preferential treatment afforded to Kordus. While Kordus and others were allowed to have personal calls without issue, the Plaintiff was terminated for making personal calls. (Plaintiff Dep., p. 60).

[Doc. 74 at 10.] However, Plaintiff fails to direct the Court to specific evidence in the record indicating racially motivated conduct and comments. Moreover, the Court has reviewed page 60 of Plaintiff's deposition, but finds no reference to personal phone calls by Plaintiff or Kordus on that page of Plaintiff's deposition. [Doc. 76-2 at 10.] Additionally, Plaintiff admitted to making personal calls from work [Doc. 76-1 at 16:3–11]; therefore, Plaintiff's own testimony in the record supports the City's preferred reason. Plaintiff has failed to direct the Court to evidence in the record that would indicate the City's proffered reason for Plaintiff's termination is merely a pretext for discrimination, and Plaintiff's conclusory allegations, without more, are insufficient to preclude granting the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). Accordingly, summary judgment should be granted on Plaintiff's Title VII race discrimination claim.[9]

### Title VII Retaliation Claim

With respect to the retaliation claim, the Greenwood Defendants argue they are entitled to summary judgment because a retaliation claim cannot be based on a complaint about conduct that does not amount to illegal racial harassment. [Doc. 70-1 at 14–15.] The Court recommends granting summary judgment on this claim because Plaintiff has failed to establish a prima facie case of retaliation and because Plaintiff cannot establish the City's articulated reason for terminating Plaintiff was pretextual.

---

[9] Because the Court concludes Plaintiff has not established the City's preferred reason for terminating Plaintiff is a pretext for discrimination, the Court need not address the remaining argument that the fact that Brown hired and promoted Plaintiff makes any claim of racial animus highly unlikely.

Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in a Title VII investigation proceeding, or hearing under this subchapter." *See* 42 U.S.C. § 2000d-3(a). The purpose of this anti-retaliation provision is to prevent "an employer from interfering with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006). The *McDonnell Douglas* burden-shifting framework applies to retaliation claims under Title VII.[10] *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000).

To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *Holland*, 487 F.3d at 218. A plaintiff has engaged in protected activity if "he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 59 (quoting 42 U.S.C. § 2000e-3(a)). Thus, "[p]rotected activities fall into two distinct categories: participation or opposition."[11] *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also Crawford v. Metro. Gov't of Nashville &*

---

[10]Again, Plaintiff does not attempt to survive summary judgment using direct or circumstantial evidence of retaliation. Instead, she relies exclusively on the *McDonnell Douglas* burden-shifting scheme to argue she can establish a prima facie case of retaliation. [Doc. 74 at 10–11.]

[11]At issue in this case is opposition activity.

*Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (stating the first clause of the anti-retaliation provision is known as the "opposition clause," and the second clause is known as the "participation clause").

Opposition activity includes internal complaints about alleged discriminatory activities. *EEOC v. Navy Fed'l Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). To support a retaliation claim, such complaints must specifically reference that the alleged discriminatory activities are motivated by a characteristic protected by Title VII and may not be vague references to discrimination or harassment. *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004); *see also Perry v. Harvey*, 332 F. App'x 728, 733 (3d Cir. 2009) ("Although informal complaint may suffice, 'the employee's "opposition" to unlawful discrimination must not be equivocal [or vague].'" (alterations in original) (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 341–43 (3d Cir. 2006))). Moreover, opposition activity is protected when the employee opposes "an actual unlawful employment practice" or "an employment practice that the employee *reasonably believes* is unlawful." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006) (citations omitted). "Because the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law." *Id.* at 339 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)).

Here, Plaintiff has failed to show she engaged in protected activity for the purposes of a retaliation claim. Plaintiff alleges four instances that could be construed as internal complaints: (1) Plaintiff expressed to Powell that Plaintiff felt Kordus was her supervisor despite Plaintiff's title as office manager [Doc. 76-1 at 5:25–6:17]; (2) Plaintiff expressed

concerns to Brown and Ouzts about Kordus not telling Plaintiff when Kordus needed to leave early [Doc. 76-2 at 25:22–26:5]; (3) Plaintiff informed Ouzts that Kordus had a problem taking instructions from Plaintiff because Plaintiff is black [Doc. 76-1 at 38:21–23]; and (4) Plaintiff went to Powell to report an incident where Ouzts was rude to Plaintiff's sister in the parking lot and later talked to Brown about the same incident [*id.* at 30:9–20].[12] However, only one of these instances could possibly be considered opposition activity—Plaintiff's informing Ouzts that Kordus had a problem taking instructions from Plaintiff because Plaintiff is black—because the other complaints are general complaints that do not allege any conduct was based on race or another protected characteristic. *See Anderson*, 122 F. App'x at 916.

Thus, to determine whether Plaintiff engaged in protected activity, the Court must determine whether Plaintiff was complaining of an actual unlawful employment practice or an employment practice Plaintiff reasonably believed was unlawful when she informed Outzts that Kordus had a problem taking instructions from Plaintiff because Plaintiff is

---

[12]The Court notes Plaintiff does not specifically direct the Court to these instances that could be construed as internal complaints. Instead, with respect to her retaliation claim in her response in opposition to the Greenwood Motion, Plaintiff merely states,

> Plaintiff was retaliated against for opposing discrimination and racial harassment in the workplace, which she reasonably believed was unlawful. Viewing the facts set forth herein, the Plaintiff reasonably believed that her reports to supervisors concerning preferential treatment and the harassment she endured in the workplace was unlawful under Title VII. Plaintiff constantly reported these matters to Ouzts, Brown and Powell, yet nothing was ever done to remedy the situation. Plaintiff felt ostracized and alienated in the workplace (Plaintiff Dep., p. 29, 64, Exhibit 2).

[Doc. 74 at 11.] Although Plaintiff makes the conclusory statement that she constantly reported the matters, the Court has conducted a thorough review of Plaintiff's response in opposition to the Greenwood Motion and finds references only to these four instances that could be construed as internal complaints, only one of which alleges the underlying conduct was motivated by Plaintiff's race. Additionally, the only record evidence Plaintiff cites to support her allegations that she complained is Plaintiff's own deposition testimony.

black.  *See Jordan*, 458 F.3d  at 338.  The Court concludes Plaintiff was not complaining

of an unlawful employment practice and that she could not have reasonably believed the

conduct she complained of amounted to a hostile work environment.  Plaintiff merely

reported to Ouzts that Plaintiff's subordinate, Kordus, did not take instructions from

Plaintiff.  There is no evidence in the record indicating Kordus did not take instructions from

Plaintiff *because of* Plaintiff's race.  Nor is there any evidence of when Plaintiff reported

Kordus's insubordination to Ouzts or the frequency of Kordus's insubordination.  Plaintiff's

allegation of insubordination by Kordus does not rise to the level of creating a hostile work

environment.  *See Lewis v. D.C.*, 653 F. Supp. 2d 64, 82 (D.D.C. 2009) ("In short, the

plaintiff's allegations of insubordination by her subordinates, negative comments by her

coworkers, non-selection for a promotion and the unresponsiveness of her supervisors fall

squarely within the category of 'ordinary tribulations of the workplace' that are not

actionable under a hostile work environment theory." (citations omitted)); *see also Faragher*

*v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("These standards for judging hostility are

sufficiently demanding to ensure that Title VII does not become a 'general civility code.'

Properly applied, they will filter out complaints attacking 'the ordinary tribulations of the

workplace, such as the sporadic use of abusive language, gender-related jokes, and

occasional teasing.'" (citations omitted)).  Additionally, Plaintiff could not have reasonably

believed her report of Kordus's insubordination described the type of severe or pervasive

environment required to establish a hostile work environment.  *See Meritor Sav. Bank, FSB*

*v. Vinson*, 477 U.S. 57, 67 (1986).  Accordingly, Plaintiff has failed to establish a prima

facie case of retaliation because she has failed to establish she engaged in protected activity.[13]

Moreover, even if Plaintiff had presented sufficient evidence to establish a prima facie case of retaliation, she has failed to present any evidence of pretext following the City's articulated legitimate, nonretaliatory explanation for terminating Plaintiff's employment. As previously explained, the City has fulfilled its burden to articulate a legitimate, nonretaliatory explanation for Plaintiff's termination—primarily because Plaintiff was making personal calls at work, though on Plaintiff's termination paperwork the City also listed a poor attendance record, poor customer service, and negative attitude. However, Plaintiff has failed to demonstrate the City's articulated reason was mere pretext.

To prove an employer's articulated reason is a pretext for retaliation, a plaintiff "must prove '*both* that the reason was false, *and* that [retaliation] was the real reason' for the challenged conduct." *Jiminez*, 57 F.3d at 378(emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). Here, as discussed above, Plaintiff fails to direct the Court to any evidence to establish the City's articulated reason for terminating Plaintiff was false

---

[13] Additionally, though the parties do not address the third element of the prima facie case, the Court is not convinced Plaintiff is able to establish a causal connection existed between the allegedly protected activity and Plaintiff's termination. To prove a causal connection existed between the protected activity and the asserted adverse action, a plaintiff must show the employer took the adverse action "'*because* the plaintiff engaged in protected activity.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). Plaintiff has failed to provide any evidence she was terminated because she complained of Kordus's insubordination. Plaintiff fails to direct the Court to any such evidence or testimony indicating the City terminated Plaintiff's employment because of her allegedly protected activity, instead relying only on her own conclusory statements that she was terminated because of her protected activity. Such conclusory statements, without any evidentiary support, are insufficient to survive summary judgment. *See Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) (citing *Carter v. Ball*, 33 F.3d 450, 461–62 (4th Cir. 1994)) (holding that conclusory statements, without specific evidentiary support, do not support a claim for discrimination); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (citations omitted) (holding that "unsubstantiated allegations" are insufficient to defeat summary judgment); *Cook v. CSK Transp. Corp.*, 988 F.2d 507, 513 (4th Cir. 1993) ("[U]nsupported allegations do not establish a prima facie case of race discrimination under Title VII.").

or that retaliation was the real motivation. Accordingly, because Plaintiff has not established her prima facie case and, even if she had established her prima facie, she has failed to demonstrate the City's articulated reason is a pretext for retaliation, summary judgment should be granted on Plaintiff's Title VII retaliation claim.

### *Civil Conspiracy Claim*

With respect to Plaintiff's civil conspiracy claim, the Greenwood Defendants argue they are entitled to summary judgment because (1) Brown cannot be named in a civil conspiracy to terminate Plaintiff because Brown had the authority to terminate Plaintiff, an at-will employee; (2) Plaintiff has no evidence of a combination of persons required to prove a civil conspiracy; (3) Plaintiff has no evidence of an improper personal motive for her termination; and (4) Plaintiff's civil conspiracy claim is barred by the applicable statute of limitations. [Doc. 70-1 at 15–23.] The Court recommends granting summary judgment on the civil conspiracy claim because Plaintiff has presented no evidence that any of the individual defendants had an agreement or joined together for the purpose of injuring Plaintiff.

As previously stated, to establish a civil conspiracy, "evidence, direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Island Car Wash, Inc.*, 258 S.E.2d at 153. In her response in opposition to the Greenwood Defendants' argument that Plaintiff has no evidence of a combination of persons required to prove a civil conspiracy, Plaintiff states,

> The Defendants erroneously argue that the Plaintiff has failed to establish a combination of persons under civil conspiracy. As previously discussed, the incident with Firriolo

18

was causing a controversy and potentially causing the individual defendants some serious problems with LLR and a suit from Firriolo. Right before she was terminated, Plaintiff provided a letter to Firriolo concerning the Mathis permits. Plaintiff had also had previous conversations with her supervisors about Mathis improperly pulling permits. She was then terminated and Brown kept mentioning complaints by contractors, yet he could only identify James Mathis and one other by name during his deposition. Ouzts was seen walking into the office shortly before Brown came to terminate Plaintiff. Outzs and Brown had also both met with her on several occasions.

[Doc. 74 at 14 (footnote omitted).] However, Plaintiff fails to direct the Court to any evidence in the record to support her contention that Brown, Ouzts, or Powell had any agreement with each other or that they joined together for the purpose of injuring Plaintiff.[14] In her response in opposition, Plaintiff does not even mention Powell as one of the people she alleges formed a civil conspiracy or what she alleges was Powell's role in a conspiracy. [*Id.*] Further, Plaintiff concedes Powell resigned in April 2007 [*Id.* at 3], which was before Plaintiff was terminated. Plaintiff's only allegation that Ouzts payed any role in her termination is that Ouzts walked in the office before Brown terminated Plaintiff and that Ouzts and Brown had met with her on several occasions. [*Id.* at 14.] These facts hardly support a finding that Ouzts and Brown were joined for the purpose of injuring Plaintiff. Brown was City Manager, and Ouzts was Interim Building Official in Plaintiff's department. [Doc. 70-2 at 1:17–2:7.] By Plaintiff's own admission, she took some of her complaints about the workplace to both Ouzts and Brown—Plaintiff expressed concerns to Brown and Ouzts about Kordus not telling Plaintiff when Kordus needed to leave early [Doc. 76-2 at

---

[14]The Court has previously recommended summary judgment be granted as to the civil conspiracy claim against Mathis.

19

25:22–26:5], and Plaintiff informed Ouzts that Kordus had a problem taking instructions from Plaintiff because Plaintiff is black [Doc. 76-1 at 38:21–23]. Accordingly, Plaintiff had met with both Ouzts and Brown on other occasions, at least some of which were at Plaintiff's request when she reported her workplace problems to them. And, even if Ouzts walked in the office before Brown terminated Plaintiff, that alone is not enough to create a genuine issue of material fact as to whether Ouzts and Brown were joined for the purpose of injuring Plaintiff.[15] Accordingly, because Plaintiff has presented no evidence from which a jury could conclude that Brown, Ouzts, or Powell had any agreement with each other or that they joined together for the purpose of injuring Plaintiff, summary judgment should be granted as to Plaintiff's civil conspiracy claim.[16]

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the motion for summary judgment filed by the Mathis Defendants [Doc. 69] be GRANTED and the motion for summary judgment filed by the Greenwood Defendants [Doc. 70] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 10, 2012
Greenville, South Carolina

---

[15]The Court notes in her response in opposition to the Greenwood Motion, Plaintiff seems to argue her civil conspiracy claim alleges a conspiracy to terminate plaintiff and a conspiracy to isolate and ostracize Plaintiff. [Doc. 74 at 12.] However, the Court concludes Plaintiff has failed to establish any of the individual defendants were joined together for the purpose of injuring Plaintiff in any way.

[16]Because the Court concludes Plaintiff has presented no evidence from which a jury could conclude that Brown, Ouzts, or Powell had any agreement with each other or that they joined together for the purpose of injuring Plaintiff, the Court need not address the Greenwood Defendants' remaining arguments with respect to the civil conspiracy claim.